**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**TRUE MANUFACTURING CO., INC.,**

      **Plaintiff,**

v.                                                            **Case No: 6:16-cv-634-Orl-37GJK**

**CHRISTOPHER BOYS;**
**COOLERDOORGASKETS.COM, INC.;**
**BLUEPRINT UNIVERSITY, INC.; and**
**AMEET MEGNATH,**

      **Defendants.**

## REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motions:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (Doc. No. 2)** |
| **FILED:** | April 14, 2016 |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED AS MOOT**.

| | |
|---|---|
| **MOTION:** | **TRUE MANUFACTURING COMPANY, INC. PLAINTIFF'S MOTION FOR FINAL DEFAULT JUDGMENT AGAINST DEFENDANTS (Doc. No. 34)** |
| **FILED:** | June 23, 2016 |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part**.

I.      **BACKGROUND.**

On April 4, 2016, Plaintiff True Manufacturing Company, Inc., filed the "Complaint" against Christopher Boys, d/b/a True Refrigeration Gaskets; Coolerdoorgaskets.com, Inc.; Blueprint University, Inc.; and Ameet Megnath (collectively, the "Defendants"). Doc. No. 1. In Count One, Plaintiff alleges an action for "False Designation of Origin pursuant to 15 U.S.C. § 1125(a)." *Id.* at ¶¶ 29-36. Count Two is an "Action for Trademark Infringement Pursuant to 15 U.S.C. § 1114." *Id.* at ¶¶ 37-44. Plaintiffs assert a cause of action labelled "Anticybersquatting Consumer Protection Act against All Defendants Pursuant to 15 U.S.C. § 1125(d)" in Count Three. *Id.* at ¶¶ 45-53. Count Four is an "Action for Common Law Trademark Infringement." *Id.* at ¶¶ 54-61. Finally, Count Five is an "Action for Common Law Unfair Competition." *Id.* at ¶¶ 62-66. All of the claims are alleged against all of the Defendants. *Id.* at ¶¶ 29-66. On April 14, 2016, Plaintiff moved for a preliminary injunction. Doc. No. 2.[1]

In April and May 2016, Plaintiff filed affidavits of service indicating that the Defendants were served with the summons and complaint on April 26, 2016. Doc. Nos. 12, 13, 17, 18. A clerk's default was entered against each Defendant on June 2, 2016. Doc. Nos. 29-32. On June 23, 2016, Plaintiff moved for a default final judgment (the "Motion") seeking a permanent injunction pursuant to 15 U.S.C. § 1116; statutory damages in the amount of $450,000.00, under 15 U.S.C. §1117(c)(2); and attorney's fees and costs. Doc. No. 34 at 17-18.[2]

Plaintiff describes itself as "an industry leader in commercial refrigeration products for over seventy years." Doc. No. 1 at ¶ 8. It sells its products through its "warehouse, e-store, parts

---

[1] On October 20, 2016, the motion for preliminary injunction was referred to the undersigned.
[2] The facts set forth below are taken from the Complaint. On June 23, 2016, the Motion was referred to the undersigned. Doc. No. 34.

- 2 -

catalogue, customer service staff, and packing and shipping resources." *Id.* at ¶ 9. Under and in connection with its trademarks, Plaintiff continuously has advertised, marketed and sold its products since 1945 in interstate commerce. *Id.* at ¶ 10. Plaintiff lists nine trademarks in its complaint that it owns, collectively referred to as the TRUE® Family of Marks. *Id.* at ¶ 11. The marks most relevant to this action are U.S. Trademark Reg. No. 753,313 for TRUE (the "TRUE® Standard Mark"), U.S. Trademark Reg. No. 2,948,740 for TRUE REFRIGERATION (the "TRUE REFRIGERATION® Mark), and U.S. Trademark Reg. No. 3,100,771 for TRUE (the "TRUE® Stylized Mark"). *Id.* at ¶ 12.

Plaintiff owns and operates the websites www.truemfg.com and http://truerefrigeration.com to advertise and promote its products. *Id.* at ¶¶ 13, 14. The websites prominently feature the TRUE® Family of Marks. *Id.*

In the Complaint, Plaintiff alleges that Defendants operate a website selling knock-off parts for Plaintiff's products at http://truerefrigerationgaskets.com. *Id.* at ¶ 18. Defendants also registered the domain name http://coolerdoorgaskets.com. *Id.* at ¶ 19. Defendants use an email address incorporating the TRUE® Standard Mark, "truegaskets@gmail.com." *Id.* at ¶ 19. Defendants' website also displays the TRUE® Stylized Mark for selling knock-off parts for Plaintiff's products. *Id.* at ¶¶ 20, 22.

In addition to the websites, Defendants Boys and Coolergaskets.com, Inc., "operate an Amazon.com store front that advertises the sale of 'Genuine OEM replacement part[s]' for True Refrigeration." *Id.* at ¶ 24. "The page also states, 'For over 65 years, True Refrigeration has been an industry leader in commercial refrigeration and has maintained high standards . . . Use genuine OEM parts for safety[,] reliability and performance.'" *Id.* The store front was set up to make it appear that the parts are from or affiliated with Plaintiff, when they are not. *Id.* In the Complaint,

Plaintiff includes pictures demonstrating the similarities between its TRUE® Stylized Mark and the version on Defendants' website. *Id.* at ¶ 25. The Defendants' version also appears in their standard invoices. *Id.* at ¶ 26. It is upon these facts that Plaintiff moves for a default final judgment. Doc. 34 at 2-10.

In the Motion, Plaintiff asks the Court to permanently enjoin the Defendants "from marketing, promoting, selling, delivering, copying, manufacturing, commercially or otherwise, any TRUE® Family of Marks, or any reproduction, counterfeit, copy, colorable imitation, confusingly similar, or substantially similar variation of said marks, including the use of the marks on Defendant's websites, including but not limited to on http://coolerdoorgaskets.com/ and Amazon.com." *Id.* at 11-12. Plaintiff also requests that Defendants be ordered to transfer the domain names to their websites to Plaintiff. *Id.* at 13.

As to damages, Plaintiff is requesting statutory damages under 15 U.S.C. § 1117(c). *Id.* at 13-14, 18. Plaintiff maintains that the Court may award statutory damages between $1,000 and $200,000, per counterfeit mark under that provision. *Id.* at 14. Plaintiff requests an award of $450,000.00. *Id.* at 18.

## II. ANALYSIS.

### A. Default Judgment.

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by the civil rules, and that fact is made to appear by affidavit or otherwise, the Clerk enters a default. Fed. R. Civ. P. 55(a). Once a Clerk's default is entered, a party may move for a default judgment under Rule 55(b)(2). A default judgment has the effect of establishing as fact the plaintiff's well-pleaded allegations of fact, and bars the defendant from contesting those facts on appeal. *Buchanan v. Bowman*, 820 F.2d 360, 361 (11th Cir. 1987).

Defendants admitted all well-pleaded allegations of the Complaint by virtue of their default. These include admitting that Plaintiff owns the family of marks referred to in the Complaint as the TRUE® Family of Marks, including the U.S. trademark registrations; that they are used in commerce; that Defendants used the family of marks to sell "knock-off parts" for Plaintiff's products, including on their websites and on an Amazon.com store front; and that Defendants' use is "confusingly similar" to Plaintiff's TRUE® Family of Marks. Doc. No. 1 at ¶¶ 10-11, 18, 20, 24. Defendants also admitted that they have been knowingly and intentionally using Plaintiff's trademarks for profit without permission. Doc. No. 1 at ¶¶ 20, 28.  As such, by virtue of their default, Defendants not only admitted they infringed Plaintiff's trademarks, but they have done so willfully. *All-Star Mktg. Group, LLC v. Media Brands Co., Ltd.*, 775 F. Supp. 2d 613, 621 (S.D.N.Y 2011) (holding that by virtue of a default, the defendants were deemed willful infringers).

    **B.**    **<u>Claims for Relief</u>.**

        1.    Causes of action.

Plaintiff alleges claims for federal trademark infringement, common law trademark infringement, and common law unfair competition. Doc. No. 1 at ¶¶ 37-44, 54-61, 62-66. To prevail on a claim for federal trademark infringement, Plaintiff must show it has a valid mark, Defendants used the mark in commerce in connection with selling or advertising goods, and Defendant's actions are likely to cause confusion. *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008). "An unfair competition claim based only upon alleged trademark infringement is practically identical to an infringement claim." *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1025-26 n.14 (11th Cir. 1989). The legal standards for Florida's common law trademark infringement and unfair competition claims are the same as those for the

federal trademark infringement and unfair competition claims. *Rain Bird Corp. v. Taylor*, 665 F. Supp. 2d 1258, 1267 (N.D. Fla. 2009).

Plaintiff demonstrated through the well-pleaded allegations in the Complaint, including the federal trademark registrations that it owns and has priority to, that Defendants used the TRUE® Family of Marks in connection with the sale, marketing, and selling of other products, and that the use likely caused consumer confusion. Doc. No. 1 at ¶¶ 10-11, 18, 20, 24, 28. Thus, pursuant to 15 U.S.C. § 1114(a), it is recommended that the Court find that Plaintiff has pled sufficient facts supporting its claims for federal and common law trademark infringement and common law unfair competition against Defendants.

As to Plaintiff's claims for false designation of origin, pursuant to 15 U.S.C. § 1125(a), the same set of facts which permit Plaintiff to prevail on its claims for trademark infringement also result in Plaintiff prevailing under Section 1125. *Babbit Elec., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994) (holding that because Section 1125(a) is broader than Section 1114, the same set of facts that allows a plaintiff to prevail on a trademark infringement claim will permit a plaintiff to recover for a false designation of origin claim). Accordingly, it is recommended that the Court find that Plaintiff pleaded sufficient facts supporting its claim for false designation of origin.

To prevail on a claim arising under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1), Plaintiff must demonstrate that "(1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x 252, 256 (11th Cir. Oct. 2,

2006) (unpublished) (citing *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001).[3]  In this case, Plaintiff demonstrated that its TRUE® Family of Marks are entitled to protection and that the Defendants' domain name (http://truerefrigertationgaskets.com) is confusingly similar to Plaintiff's trademark.  Doc. No. 1 at ¶¶ 16-18. It does not appear that the domain name http://www.coolerdoorgaskets.com is confusingly similar to any of Plaintiff's trademarks, however, as it does not incorporate or imply any phrasing from those marks and Plaintiff does not allege that it does so.[4]

As to the third element, 15 U.S.C. § 1125(d)(1)(B) provides that a court may consider the following non-exclusive list of factors:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
>
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
>
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
>
> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

---

[3] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. 11th Cir. R. 36-2.
[4] This refers only to the domain name, and not the content on the coolerdoorgaskets.com website.

>  (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
>
>  (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
>
>  (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

Section 1125(d)(1)(B)(ii) also provides that "[b]ad faith intent . . . shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." *Id*.

As to the first five factors outlined above, Plaintiff "has continually advertised, marketed, and sold its products . . . in interstate commerce under and in connection with its valuable and well-known TRUE® Family of Marks" for over seventy years, and Defendants have no intellectual property rights to the mark or the domain name at issue. Doc. No. 1 at ¶¶ 10, 28. Defendants admitted that they used the domain name for their "own commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of Defendants' website." *Id.* at ¶ 52. Defendants have no bona fide noncommercial or fair use of the mark in their domain name. *Id.* at ¶¶ 50, 51. Defendants' website, http://truerefrigertationgaskets.com, is substantially similar to Plaintiff's http://truerefrigeration.com website. Doc. No. 34 at 13. It requires a "quantum leap of imagination" to believe that a user of the internet accessing Defendants' website would not associate it with Plaintiff's TRUE® Family of Marks. *Victoria's Cyber Secret Ltd. P'Ship v. V*

*Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1347 (S.D. Fla. 2001) (finding that an internet user would likely associate the domain names at issue with Victoria's Secret, a famous trademark). Thus, it is recommended that the Court find with respect to the first five factors listed above, Plaintiff demonstrated Defendants' bad faith intent to profit from the mark.

Plaintiff does not address the sixth and seventh factors. Because Plaintiff has not alleged or provided evidence supporting these factors, it is recommended that the Court find that the sixth and seventh factors do not support a finding of bad faith intent to profit from Plaintiff's trademarks.

As to the eighth and ninth factors, Defendants utilized a domain name that is confusingly similar to Plaintiff's trademark. Doc. No. 1 at ¶ 18. As set forth above, Plaintiff's widely used TRUE® Family of Marks since 1945. *Id.* at ¶ 10. Plaintiff continually advertised, marketed, and sold its products in connection with its TRUE® Family of Marks. *Id.* Accordingly, it is recommended that the Court find that the eighth and ninth factors support a finding of bad faith intent to profit from Plaintiff's trademarks.

As set forth above, section 1125(d)(1)(B)(ii) provides that "[b]ad faith intent . . . shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." There has been no showing of any reasonable belief that the Defendants' use of the domain name was a fair use or otherwise lawful. Based on the forgoing, after considering all of the factors outlined in 15 U.S.C. § 1125(d)(1)(B), it is recommended that the Court find that Plaintiff sufficiently pleaded and demonstrated Defendants' bad faith intent to profit from Plaintiff's trademarks.

    2.    Remedies.

Plaintiff requests statutory damages in the amount of $450,000.00 under 15 U.S.C. § 1117(c). Doc. No. 34 at 13-16. Plaintiff is entitled to an award of statutory damages not less than

$1,000.00 and not more than $200,000.00 per counterfeit mark. 15 U.S.C. § 1117(c).

In support of the amount requested, Plaintiff argues that Defendants' willfulness to counterfeit its mark is shown by the well pleaded allegations in the Complaint. Doc. No. 34 at 14. Plaintiff alleges in the Complaint that Defendants marketed and sold "knock-off parts" and that Defendants' actions were willful. *Id.* Plaintiff argues that when a party defaults, statutory damages are particularly appropriate and cites cases supporting an award of damages in the range Plaintiff seeks here. *Id.*, *quoting Coach, Inc. v. Just A Boun, LLC*, Case No. 6:11–cv–797–Orl–18GJK, 2011 WL 6318966, at *3 (M.D. Fla. Nov. 8, 2011). Plaintiff also points out that it "began use of its TRUE mark in 1945, and has since spent significant resources, money, time and effort in its TRUE Family of Marks." Doc. No. 1 at ¶¶ 10, 16. Finally, Plaintiff argues that its requested damages award is needed to deter Defendants and others. Doc. No. 34 at 15. Plaintiff thus asks the Court to award it "$450,000 in statutory damages for Defendants' counterfeiting." Doc. No. 34 at 16.

In determining the amount of damages to award for trademark infringement, courts have looked at seven factors: 1) the expenses saved and the profits reaped; 2) plaintiff's lost revenues; 3) the value of the trademark; 4) the deterrent effect on others; 5) whether defendant's conduct was willful or innocent; 6) whether defendant has cooperated in providing particular information to assess the value of the infringing material; and 7) the potential for discouraging defendant. *All-Star Mktg. Group, LLC v. Media Brands Co.*, 775 F. Supp. 2d 613, 622 (S.D.N.Y 2011) (looking to guidance from the Copyright Act in determining statutory damages for trademark violations); *Chanel, Inc. v. Mesadieu*, Case No. No. 6:08–cv–1557–Orl–31KRS, 2009 WL 2496586, at *6 (M.D. Fla. Aug. 12, 2009) (applying factors to determine damages for trademark counterfeiting and infringement).

There is no record evidence to determine the first and second factors. As to the third factor,

Defendants have admitted, by virtue of their default, the well-pleaded allegation that Plaintiff "expended, and continues to expend, a substantial amount of resources, money, time and effort promoting, marketing, advertising and building consumer recognition and goodwill in its trademarks, including, but not limited to, the TRUE® Family of Marks." Doc. No. 1 at ¶ 16. As a result of Plaintiff's work, products bearing the TRUE® Family of Marks are used among the relevant purchasing public and consumers throughout the United States to identify Plaintiff's high-quality products and distinguish its products from those offered by its competitors and others. *Id.* at ¶ 15. The fact that Defendants willfully counterfeited Plaintiffs' trademarks also supports a finding that they are high value marks. Accordingly, the Court finds the marks at issue are high value marks. The high value of the marks supports granting a large award.

The desirability of deterring others from infringing on Plaintiff's marks and Defendants' willful infringement (fourth and fifth factors) also support granting a large award. *See All-Star Marketing Group, LLC*, 775 F. Supp. 2d at 623; 15 U.S.C. § 1117(c)(2). Because Defendants defaulted, they did not cooperate as provided in the sixth factor. The seventh factor, potential for discouraging Defendants, also cuts in favor of granting a large award. Plaintiff established that three of its marks were counterfeited: Registration Nos. 753,313, 2,948,740 and 3,100,771. Consequently, it is recommended that the Court award Plaintiffs statutory damages of $150,000 per counterfeit mark, for a total award of $450,000 in statutory damages.

Plaintiff also requests a permanent injunction. Doc. No. 34 at 11-13. 15 U.S.C. § 1116(a) permits a court to grant injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable." The Eleventh Circuit has indicated that the four-factor test set forth in *Ebay Inc. v. Mercexchange, LLC*, 547 U.S. 388 (2006), must be applied in determining whether injunctive relief is warranted. *See Axiom Worldwide, Inc.*, 522 F.3d at 1227-28. As

explained in *Ebay Inc.*, 547 U.S. at 391, a plaintiff must establish the following four elements to be entitled to a permanent injunction: (1) irreparable injury; "(2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and 4) that the public interest would not be disserved by a permanent injunction." *Id*.

In trademark infringement actions, injunctive relief is often appropriate because: 1) "there is no adequate remedy at law to redress infringement and [2)] infringement *by its nature* causes irreparable harm." *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989) (emphasis added) (quoting *Processed Plastic Co. v. Warner Commc'ns*, 675 F.2d 852, 858 (7th Cir. 1982)). Further, courts have generally recognized that in such cases, the public interest is "paramount." *BellSouth Advert. & Publ'g Corp. v. Real Color Pages, Inc.*, 792 F. Supp. 775, 785 (M.D. Fla. 1991). Trademark infringement encroaches on "the right of the public to be free of confusion" as well as "the synonymous right of the trademark owner to control his products' reputation." *Id*. (citing *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976)).

In this case, the Complaint's well-pleaded allegations establish that Plaintiff developed substantial goodwill among the consuming public that would be undermined if Defendants are not prohibited from their infringing conduct. The well-pleaded allegations of the Complaint also establish that Defendants' actions are likely to lead to continued confusion about the origin, authenticity, and association of Defendants with Plaintiff's trademarks. Thus, Plaintiff established irreparable injury and that monetary damages are inadequate to compensate for the injury. Moreover, Defendants have not shown any injury they will suffer if enjoined from infringing Plaintiff's trademarks. While Defendants will have to change some content on their websites,

invoices, and an email address, which may have some expense, Plaintiff's interest in maintaining the integrity of the substantial goodwill it has built up in its TRUE® Family of Marks since 1945 outweighs any injury the Defendants may suffer. The public interest is served by ensuring that businesses such as Defendants' are not operated, advertised, and promoted under such marks without the permission and standards of the owner of the marks. Accordingly, it is recommended that the Court find that Plaintiff is entitled to a permanent injunction against Defendants.

Section 1125(d)(1)(C) provides that "[i]n any case involving the . . . use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." Plaintiff requests that the Court order Defendants to transfer the http://truerefrigertationgaskets.com and the http://www.coolerdoorgaskets.com domain names to Plaintiff. Doc. No. 34 at 13, 18. Under Section 1125(d)(1)(C), and based on the recommendation set forth above in Part B.1., it is recommended that the Court require Defendants to transfer the domain name http://truerefrigertationgaskets.com to Plaintiff.

Plaintiff also requests that the Court order Defendants "and/or Godaddy.com LLC to cancel, park, deactivate, or suspend the http://www.coolerdoorgaskets.com;" and Defendants "and/or Amazon.com to cancel, park, deactivate, or suspend the http://www.amazon.com/dp/B00EN8GK6S?m=A1O7JQYWRPWM9J&ref_=v_sp_detail_page store front;" and Defendants "and/or the Registrar (GoDaddy.com LLC) to transfer the http://truerefrigerationgaskets.com/ domain name to Plaintiff True Mfg." Doc. No. 34 at 17-18. Godaddy.com LLC and Amazon.com are not parties to this proceeding, and there are no allegations that they acted in concert or participation with Defendants. Plaintiff did not provide any authority for the Court to order these entities to comply with a permanent injunction. Thus, it

is recommended that the Court refrain from including Godaddy.com LLC and Amazon.com in the permanent injunction. *See* Fed. R. Civ. P. 65(d)(2) (order on an injunction binds parties and those in active concert or participation with the parties that receive actual notice of the order); *Doe v. Dominique*, Case No. 1:13-CV-04270-HLM, 2014 WL 12115948, at *2 (N.D. Ga. 2014) (relying on Federal Rule of Civil Procedure 65(b) in refusing to order domain name registrars to park the domain names because they were not parties, and thus the court lacked power to issue a temporary restraining order mandating them to act).

Plaintiff asks for an award of attorney's fees and costs. Doc. No. 34 at 18. 15 U.S.C. § 1117(a) provides that a prevailing party shall be entitled to recover "the costs of action," and "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing parties."

Although Section 1117(a) does not define what costs are recoverable, courts have interpreted it to mean those costs which are recoverable under 28 U.S.C. § 1920. *FSC Franchise Co. v. Express Corporate Apparel, LLC*, Case No. 8:09-cv-454-T-23TGW, 2011 WL 1226002 at *12 (M.D. Fla. Feb. 28, 2011) (citing *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 370-71 (4th Cir. 2001) (finding costs in Section 1117(a) generally means those costs defined in 28 U.S.C. § 1920); *Rib City Grp., Inc. v. RCC Rest. Corp.*, Case No. 2:09–cv–827–FtM–29SPC, 2010 WL 4739493 at *2 (M.D. Fla. Nov. 16, 2010) (denying costs which were not recoverable under Section 1920).

Regarding the recovery of attorneys' fees under Section 1117(a), "exceptional cases" are those that involve conduct that is "malicious, fraudulent, deliberate, and willful," or in which there is evidence of fraud or bad faith. *Tire Kingdom, Inc. v. Morgan Tire & Auto. Inc.*, 253 F.3d 1332, 1335-36 (11th Cir. 2001); *Burger King Corp., v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994). A party's default alone is not an exceptional circumstance. *See generally FSC*

*Franchise Co.*, Case No. 8:09–CV–454–T–23TGW, 2011 WL 1226002, at *8-9. Defendants' willful violations in using Plaintiff's trademarks make this case an extraordinary one, entitling Plaintiff to an award of attorney's fees, thus it is recommended that Plaintiff's request for attorney's fees be granted. *See Chanel, Inc.*, 2009 WL 2496586 at *9; *All-Star Mktg. Group, LLC*, 775 F. Supp. 2d at 628.

Plaintiff submitted a proposed order on the Motion, granting it a permanent injunction, damages, attorney's fees and costs, and final judgment.[5]  Doc. No. 34-1.  With the exception of ordering the transfer of the domain name http://www.coolerdoorgaskets.com and ordering Godaddy.com LLC and Amazon.com to perform certain acts, the proposed order is consistent with the undersigned's report and it is recommended that the Court issue a permanent injunction, damages award, and final judgment consistent with the proposed order.

### III. CONCLUSION.

Based on the forgoing, it is **RECOMMENDED** that the Court:

1. **DENY as moot** Plaintiff's Motion for Preliminary Injunction, Doc. No. 2;

2. **GRANT in part and DENY in part** the Motion, Doc. No. 34, and enter a default judgment against the Defendants;

3. Award Plaintiff $450,000.00 in statutory damages against the Defendants pursuant to 15 U.S.C. § 1117(c);

4. Award attorneys' fees and costs under 15 U.S.C. § 1117(a);

5. Enter a permanent injunction against Defendants consistent with the proposed order, but deleting ordering the transfer of the domain name http://www.coolerdoorgaskets.com and requirements imposed on Godaddy.com

---

[5] Although requested in the Motion, the proposed order does not mention postjudgment interest. Doc. No. 34-1.


       LLC and Amazon.com, Doc. No. 34-1; and

6. Retain jurisdiction over the case for sixty days to quantify attorneys' fees and costs and ensure compliance with the permanent injunction.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida, on November 8, 2016.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Parties
Courtroom Deputy